IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MICHAEL TYSON LEE,           )
AIS # 240003,                )
                            )
     Petitioner,         )
                            )
v.                       )   CASE NO. 2:25-CV-827-WKW
                            )          [WO]
PHILLIP MITCHELL,      )
                            )
     Respondent.      )

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

On July 25, 2025, Michael Tyson Lee, an Alabama prisoner proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Northern District of Alabama.[1]  (Doc. # 1.[2])  On October 15, 2025, the petition was transferred to this court.  Petitioner challenges his

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009).  Absent evidence to the contrary, the court "assume[s] that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014) (per curiam).  Petitioner signed his petition under penalty of perjury, asserting that it was "placed in the prison [mailing system]" on July 25, 2025.  (Doc. # 1 at 16.)

[2] References to "Doc(s)." are to the document numbers in the court's electronic record, as compiled and designated on the docket sheet by the Clerk of Court.  Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system.

conviction, after a jury trial, for first-degree escape under § 13A-10-31 of the Alabama Code.  (Doc. # 1 at 1–2; Doc. # 13-14.)

Respondent, through the Office of the Attorney General of the State of Alabama, filed an Answer to the petition under Rule 5 of the *Rules Governing Section 2254 Cases in the United States District Courts*, as well as records of the state-court proceedings.   (Doc # 13.)   He argues that Petitioner's claim is unexhausted and procedurally defaulted or, alternatively, fails on the merits under the deferential review provided by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d).  Thus, he contends that the petition should be dismissed with prejudice. (Doc. # 13.)  At the court's directive, Petitioner filed a reply.  (Docs. # 14, 16.)  Petitioner later filed a supplemental reply.[3]  (Doc. # 20.)

Thereafter, because the parties' averments bearing on exhaustion and procedural default were unclear, an Order was entered directing Respondent to file a surreply.  (Doc. # 17.)  Clarification was sought on several issues, including whether Petitioner filed a petition for a writ of certiorari to the Alabama Supreme Court on direct appeal. (Doc. # 17 at 2–5.)  Respondent also was ordered to address

---

[3] Although the supplement is untimely and was not ordered or authorized by the court, its contents nevertheless have been considered.  The supplement largely reasserts, with additional elaboration and exhibits, the same legal arguments raised in Petitioner's reply.

Petitioner's assertion of actual innocence as a gateway to bypass a procedural bar. (Doc. # 17 at 6.)  Respondent filed the required surreply.  (Doc. # 21.)

Based on the parties' submissions, an evidentiary hearing is not warranted. *See* Rule 8, *Rules Governing Section 2254 Cases in the United States District Courts*.  Although Respondent raises several grounds for dismissal, one is dispositive:  Petitioner's claim is procedurally defaulted.  Petitioner has not shown that this default is excused under either the cause-and-prejudice exception or the fundamental-miscarriage-of-justice exception.  Accordingly, the petition will be dismissed with prejudice.  Furthermore, Petitioner will be denied a certificate of appealability.

## II.  SUBJECT MATTER JURISDICTION AND VENUE

Under 28 U.S.C. § 2254(a), federal district courts have the authority to consider an application for a writ of habeas corpus on behalf of an individual in state custody pursuant to a state-court judgment but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." This provision limits authority, rather than conferring it, with habeas jurisdiction established by 28 U.S.C. § 2241.  *See Thomas v. Crosby*, 371 F.3d 782, 787 (11th Cir. 2004).  Under § 2241, federal district courts have the power to grant writs of habeas corpus "within their respective jurisdictions," § 2241(a), when a state-convicted prisoner "is in custody in violation of the Constitution, " § 2241(c)(3).

The "in-custody" requirement mandates that the habeas petitioner must "be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) (per curiam). Furthermore, § 2241(d), referred to as a "venue provision," "gives the petitioner 'the option of seeking habeas corpus either in the district where he is confined or the district where the sentencing court is located.'" *Dobard v. Johnson*, 749 F.2d 1503, 1509–10 (11th Cir. 1985) (Clark, J., dissenting) (citation omitted).

Petitioner was in custody under a state-court judgment in a state prison located in this district when he filed this petition. Furthermore, Petitioner was convicted and sentenced in the Circuit Court of Covington County, Alabama, which is located in the Middle District of Alabama. Accordingly, this court has subject matter jurisdiction to consider the petition, and venue is proper.

## III.  BACKGROUND

### A.    State-Court Proceedings

Petitioner was convicted, after a trial by jury, for first-degree escape, a violation of § 13A-10-31 of the Alabama Code. He was sentenced as a habitual felony offender to 25 years in prison. (Doc. # 1 at 1–2; Doc. # 13-14.)

He appealed his judgment of conviction to the Alabama Court of Criminal Appeals (ACCA). (Doc. # 13-14.) The ACCA summarized the trial evidence as follows:

Lee was on probation for a prior felony conviction. On February 27, 2020, Lee's probation was revoked. The revocation order stated that "the Sheriff of Covington County, Alabama, shall now take custody of the Defendant and forthwith deliver him to the Alabama Department of Corrections to serve the sentence that was heretofore imposed upon him." (C. 125.)

On March 31, 2020, while in custody at the Covington County Jail, Lee was authorized for work release by the Sheriff of Covington County. Around 6 a.m. that day, Rita Barnes picked up Lee and another inmate, Albert Fanning, for work release, and they left the jail in Barnes's vehicle. It appears that Barnes and Fanning were in a romantic relationship at the time. Shortly after leaving the jail, Barnes and Fanning dropped off Lee at a house, and they did not see him again that day. Fanning returned to the jail that night, but Lee failed to return to the jail.

Around midnight on April 1, 2020, the jail officers were conducting a search for contraband in the work-release dormitory of the jail when they discovered that Lee had failed to return to the jail. The officers searched the entire jail, but they failed to find Lee.

On April 2, 2020, Chad Clark, a volunteer who has a K-9 tracking dog, was called to "run a track" for Lee. (R. 124.) Clark ran the first track on "Hog Foot Road," but that track ended because Lee was "carried to a different location where he was spotted." (R. 125.) Clark ran a second track on Hutto Road where Lee had been seen walking down the road. After tracking 100-200 yards down Hutto Road, Clark went up an embankment beside the road and found Lee lying face down in thick bushes. It was Clark's impression that Lee was trying to hide.

Lee testified in his own defense. He did not deny that he failed to return to the jail or claim that he did not know that he was supposed to return to the jail. Instead, Lee testified:

> "I got a shower and fell asleep. I woke up, and it was like 12:49 in the morning. And they had a manhunt out for me, and I was just out of pocket kind of tripping because

5

> everybody is telling me that they got you all over the news escaped from the Covington County Jail.  I don't know if there was a shoot-on-sight order or what. It kind of spooked me to be honest with you.  But it was not -- I did not leave knowing I wasn't gonna come back."

Lee was asked:  "Why did they find you in the place where they found you?"  Lee testified:

> "I had been walking from Brooklyn down there from Brooklyn Road through the woods -- I mean, through -- down the dirt roads and woods.  I was tired and walked off in the woods, took a leak, and I laid down about ten foot [sic] away from that. And I was actually asleep, I believe, when they come out there and got me."

(R. 168.)

(Doc. # 13-14 at 2–4.)

On direct appeal, Petitioner "raise[d] one issue":  He "was wrongly convicted of felony first-degree escape under § 13A-10-31, Ala. Code 1975, instead of misdemeanor willful failure to return to his place of confinement under § 14-8-42, Ala. Code 1975."  (Doc. # 13-14 at 4.)  The ACCA recited verbatim Petitioner's argument:

> "The Appellant was incorrectly convicted for Escape in the First Degree in that while ordered to the Department of Corrections, the Department Corrections asserted no control or jurisdiction over him and by actions of the County Sheriff by placing the Appellant on work release in essence was the controlling party and thus the Appellant should have been indicted and convicted of willful failure to return to his place of confinement."

6

(Doc. # 13-14 at 5 (citation omitted)).   The ACCA then rejected the argument,

explaining that

> the Alabama Supreme Court recently concluded that "escapes from
> county work-release programs are governed by [Ala. Code 1975,
> §§ 13A-10-30 through 13A-10-33 ('the escape statutes')]", and the
> Court held that "to the extent §§ 14-8-42 and 14-8-43[, Ala. Code
> 1975,] separately define and punish the offense of escape from a county
> work release program, those sections were impliedly repealed upon the
> effective date of the escape statutes." *Ex parte Jones*, [Ms. 1210194,
> Sept. 16, 2022] ___ So. 3d ___, ___ (Ala. 2022).   Therefore, Lee's
> argument is without merit.   Thus, we affirm Lee's conviction for first-
> degree escape under § 13A-10-31.

(Doc. # 13-14 at 5 (alterations in original).)

Following the ACCA's affirmance of Petitioner's first-degree escape

conviction on April 28, 2023, Petitioner did not file a petition for certiorari review

in the Alabama Supreme Court.[4]  *See* Ala. R. App. P. 39(c)(2) (requiring a defendant

in a criminal case to file a petition for a writ of certiorari "within 14 days (2 weeks)

of the decision of the Court of Criminal Appeals on the application for rehearing").

As discussed below, that failure is dispositive.

Thereafter, proceeding *pro se*, Petitioner filed four petitions in the Alabama

state courts seeking post-conviction relief under Alabama Rule of Criminal

---

[4] Respondent does not address whether Petitioner sought rehearing in the ACCA, *see* Ala. R. App.
P. 39(c)(1), but Respondent's exhibits indicate that he did not. (Docs. # 21-1 through 21-5.)  In
any event, Petitioner did not file a petition for writ of certiorari in the Alabama Supreme Court on
direct appeal.

Procedure 32. Those collateral proceedings are noted solely to complete the procedural history; they do not affect the analysis or disposition here because Petitioner's claim fails for reasons apparent from, and resolved by, his failure to complete direct review, independent of any Rule 32 litigation.

## B.   28 U.S.C. § 2254 Petition

In his 28 U.S.C. § 2254 petition, Petitioner challenges his conviction for first-degree escape under § 13A-10-31 of the Alabama Code, after a jury trial, for which he received a 25-year sentence due to his status as a habitual felony offender. (Doc. # 1 at 1–2; Doc. # 13-14.)   For Ground One in his petition, Petitioner alleges: "The State failed to prove the key element of custody in this case, and Petitioner is actually innocent of the offense of which he was convicted." (Doc. # 1 at 5.)   For the supporting facts, he avers:

> Lee was serving a sentence for the city of Andalusia.  On 02/25/2025 [sic], Lee's city sentence expired, but Lee was not released from jail. On 02/27/2025 [sic], the district attorney's office filed [a] motion to revoke Lee's probation[;] that same day Lee's probation was revoked, without Lee's knowledge or presence at a hearing.  The seizure of Lee's persons [sic] on 02/25/2025 [sic], without an arrest warrant, written notification from a probation [officer], or a crime being committed was unlawful.  The revocation of Lee's probation was not permitted by law. Lee's detention was not pursuant to a lawful arrest, or order of court. Lee was not lawfully in jail and the State failed to prove the element of custody in this case.

(Doc. # 1 at 5 (alterations added).)   Petitioner's references to the year 2025 are scrivener's errors and should instead read 2020. (*See* Doc. # 13-14 at 2; Doc. # 16

8

at 1; Doc. # 20-1 at 7.)  By 2025, he was serving his sentence on his first-degree escape conviction.

In response to the § 2254 form's question—"If you did not raise this issue in your direct appeal [referring to the issue raised in the § 2254 petition], explain why"—Petitioner states that his "appeal attorney refused to raise the issue" he now asserts.[5]  (Doc. # 1 at 5–6.)  Petitioner also checked the box indicating that he filed a petition for a writ of certiorari in the Alabama Supreme Court on direct review, but he provides no docket number, decision date, or description of the grounds raised, instead marking each category as "N/A."  (Doc. # 1 at 3.)  The record contradicts this assertion.  Respondent submitted a docket printout from the Alabama Appellate Courts Public Portal in Petitioner's direct appeal showing that no petition for certiorari was filed in the Alabama Supreme Court.  (Doc. # 21-1; *see* Doc. # 21 at 4–5.)  Respondent also has represented that neither the Alabama Attorney General's Office's internal docketing system nor Alacourt reflects that Petitioner filed a petition for a writ of certiorari on direct appeal.  (Doc. # 21 at 4.)  Accordingly, it is clear that Petitioner did not file a petition for writ of certiorari in the Alabama Supreme Court on direct review.

---

[5] Petitioner submitted his § 2244 petition on a form denoted as AO 241 (Rev. 09/15).

## IV.  DISCUSSION

Respondent argues that Petitioner's claim in this 28 U.S.C. § 2254 petition that the State failed to prove the custody element required for his first-degree escape conviction is procedurally defaulted because Petitioner did not seek certiorari review in the Alabama Supreme Court on direct appeal.  Petitioner disputes that the claim is procedurally defaulted and, in the alternative, argues that any default is excused under the exceptions to the procedural-default rule.  For the reasons explained below, Respondent's position prevails.

**A.**　　**28 U.S.C. § 2254:  Exhaustion and Procedural Default**

In 28 U.S.C. § 2254 cases, the procedural-default doctrine is closely linked to the exhaustion requirement.  Section 2254 requires petitioners to exhaust all available state-law remedies.  In *O'Sullivan v. Boerckel*, the Supreme Court of the United States held "that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  526 U.S. 838, 845 (1999).  There, after the Illinois Appellate Court affirmed his convictions, Boerckel sought discretionary review in the Illinois Supreme Court but omitted three claims he later raised in his federal habeas petition.  *See id.* at 840–41, 843.  By the time he filed his federal habeas petition, that avenue of review was "no longer available" because "the time for filing such a petition ha[d] long passed."  *Id.* at 848 (citation omitted).  The Court

therefore held that Boerckel's failure to present those claims to the Illinois Supreme Court in a timely petition resulted in a procedural default barring federal habeas review. *See id.*

In *Freeman v. Commissioner, Alabama Department of Corrections*, the Eleventh Circuit explained the exhaustion doctrine as it applies to Alabama state-court review:

> Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. Under the exhaustion requirement, a habeas petitioner challenging a state conviction must first attempt to present his claim in state court.
>
> The exhaustion requirement springs from principles of comity, which protect the state court's role in the enforcement of federal law and prevent disruption of state court proceedings. Consistent with the purpose of the exhaustion rule, state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. In the context of a habeas proceeding in the Alabama state courts, one complete round of Alabama's established appellate review process means that the claim must be presented on appeal to the Alabama Court of Criminal Appeals and on petition for discretionary review to the Alabama Supreme Court.[6]

---

[6] Additionally, before seeking discretionary review in the Alabama Supreme Court, a state prisoner must file an application for rehearing in the ACCA. *See* Ala. R. App. P. 39(c)(1) ("The filing of an application for rehearing in the Court of Criminal Appeals is a prerequisite to review by certiorari in the Supreme Court, except" in circumstances not applicable here); Ala. R. App. P. 40(d)(1) ("In all criminal cases except pretrial appeals by the state, the filing of an application for rehearing in the Alabama Court of Criminal Appeals is a prerequisite to certiorari review by the Alabama Supreme Court."); *see also Price v. Warden, Att'y Gen. of Ala.*, 701 F. App'x 748, 749–50 (11th Cir. 2017) (per curiam) ("In an Alabama state habeas proceeding, a complete round of the state's established appellate review process includes an appeal to the Alabama Court of Criminal Appeals and a petition for discretionary review in the Alabama Supreme Court.").

> Once the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied. The Supreme Court has instructed us that if the substance of a federal habeas corpus claim was first presented to the state courts, despite variations in the factual allegations urged in its support, the claim is exhausted. In accordance with this principle, this Court has stated that the claims petitioners present in their federal habeas petition are not required to be carbon copies of the claims they presented to the state courts.

46 F.4th 1193, 1216–17 (11th Cir. 2022) (cleaned up) (footnote added).

Under the procedural-default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). As the Eleventh Circuit further has explained, "[s]trictly speaking, failing to raise an argument in state court is an exhaustion problem, not a procedural default." *Ledford v. Warden, Ga. Diagnostic Prison*, 975 F.3d 1145, 1162 (11th Cir. 2020). "But a claim is procedurally defaulted for the purposes of federal habeas review where the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 1162 n.11 (cleaned up); *see also Smith*, 256 F.3d at 1138 ("The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine. If the petitioner has failed to exhaust state remedies that

are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception applies.").

On direct appeal to the ACCA, Petitioner argued that he was not in the legal custody of the Alabama Department of Corrections (ADOC) at the time of the alleged escape because, in his view, the ADOC lacked "control or jurisdiction" over him while he was on work release.  (Doc. # 13-14 at 5.)  Instead, Petitioner maintained that the county sheriff exercised the requisite control by overseeing him on work release.  On that basis, Petitioner contended that leaving or failing to return from work release was not a felony "escape from custody" under § 13A-10-31 of the Alabama Code, but rather a misdemeanor offense of willfully failing to return to confinement under § 14-8-42 of the Alabama Code.  (Doc. # 13-14 at 5.)

The ACCA rejected Petitioner's argument and affirmed Petitioner's conviction for the reasons set out in its Memorandum Decision dated April 28, 2023. (Doc. # 13-14.)  Thereafter, Petitioner had both the obligation and the opportunity to seek certiorari review in the Alabama Supreme Court, but he did not pursue that available state-court remedy.  Therefore, this claim is unexhausted.  *See* 28 U.S.C. § 2254(b)(1); *Freeman v. Comm'r, Ala. Dep't of Corr.*, 46 F.4th 1193, 1216 (11th Cir. 2022).

Any attempt by Petitioner to return to an Alabama state court now to file a petition for a writ of certiorari on direct appeal would be untimely under the applicable Alabama Rules of Appellate Procedure. *See* Ala. R. App. P. 39(c)(1)–(2); (*see also* Doc. # 13-14 (ACCA's Memorandum Decision dated April 28, 2023).) Because state procedural rules foreclose any available state remedy as to this claim, the claim is procedurally defaulted for purposes of federal habeas review. *See Smith*, 256 F.3d at 1138 ("The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine. If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief . . . .").

Petitioner's situation is comparable to that presented in *Boerckel*. The petitioner in *Boerckel* failed to include all of his federal habeas claims in his petition for leave to appeal to the state's highest court on direct appeal. *See* 526 U.S. at 840–41, 843. Here, Petitioner failed entirely to seek certiorari in the state's highest court on direct appeal. Both situations involve a failure to properly exhaust state remedies, as both involve not giving the state's highest court the opportunity to address the claims.

To avoid the exhaustion requirement, Petitioner argues that the claim asserted in his 28 U.S.C. § 2254 petition is substantively different from the one his attorney raised on direct appeal. (Doc. # 20 at 6.) He maintains that the relevant issue is not

14

"whos[e] custody [he] was in," as argued on direct appeal, but instead whether he was in "'lawful' custody at all."[7] (Doc. # 20 at 6.) Even accepting Petitioner's premise that his current theory (not in lawful custody at all) substantively differs from the argument presented on direct appeal (whose custody he was in), the distinction does not help him. He did not give the Alabama state courts "one full opportunity" to resolve federal constitutional issues "by invoking one complete round" of the State of Alabama's established appellate review process on direct appeal. *O'Sullivan*, 526 U.S. at 845; *accord Freeman*, 46 F.4th at 1216–17; *see also* 28 U.S.C. § 2254(b)(1). In Alabama, that complete round requires presentation of the claim in a petition for discretionary review in the Alabama Supreme Court. *Freeman*, 46 F.4th at 1216–17. Because on direct review Petitioner did not seek certiorari review in the Alabama Supreme Court for the claim he now advances in his § 2254 petition (indeed, he filed no petition for a writ of certiorari at all), he failed to complete one full round of direct review for that claim—whether framed as a

---

[7] Respondent argues that the claim he raised on direct appeal in state criminal proceedings is the "same or similar" custody-element challenge Petitioner now advances in his § 2254 petition. According to Respondent, both claims focus on the State's alleged failure to prove the custody element necessary to sustain a first-degree escape conviction and that the claim is unexhausted. (Doc. # 13 at 11.)

challenge to which jurisdiction had custody or as "lawful custody" theory.  The claim is therefore unexhausted.[8]

Petitioner also asserts that he raised his claim "that he was not in lawful custody" in four separate Rule 32 petitions.  (Doc. # 1 at 7.)  But repeating a claim in state collateral proceedings does not cure a procedural default that arose on direct review.  Because Petitioner failed to complete one full round of direct review by raising the claim in a petitioner for certiorari review in the Alabama Supreme Court, *see Freeman*, 46 F.4th at 1217, the claim remains procedurally defaulted regardless of whether it is later presented (even repeatedly) in Rule 32 proceedings.  The Eleventh Circuit's underscored this point in *Smith v. Jones*, 256 F.3d 1136 (11th Cir. 2001).

In *Smith*, the court noted the petitioner's Rule 32 proceedings only as background for procedural context because those proceedings had "no direct bearing" on whether the claims were procedurally defaulted based on failures during direct review.  *See id.* at 1138 n.2 ("We mention those [Rule 32] collateral review events only in a footnote, because they have no direct bearing on the issues we address in this opinion, which relate to direct review.").  Likewise, in *Tarver v.*

---

[8] Consequently, it is unnecessary to decide, and Respondent does not address, whether Petitioner fairly presented a *federal constitutional* claim to the ACCA.  *Freeman*, 46 F.4th at 1217.  In any event, the record casts substantial doubt on whether he did.

*Hopper*, the Eleventh Circuit explained that "state post-conviction proceedings do not preclude a finding of procedural default," rejecting the argument that raising a claim for the first time in Alabama collateral proceedings (then Temporary Rule 20, now Rule 32) avoids procedural default.  169 F.3d 710, 713 (11th Cir. 1999).  The court emphasized that allowing federal review of procedurally defaulted claims in every state with state post-conviction proceedings would be against the Circuit's "precedent and practice."  *Id.*; *see also Johnson v. Lee*, 578 U.S. 605, 609 (2016) ("The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising the claim on collateral review." (quoting *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350–351 (2006)).  Because the procedural default here stems from Petitioner's failure to complete direct review by filing a certiorari petition in the Alabama Supreme Court, and nothing in the record suggests any basis to depart from the general rule, Petitioner's Rule 32 petitions do not alter the analysis.

**B.**    **Limited Exceptions to Merits Review Despite Procedural Default**

Two narrow exceptions permit a federal court to reach the merits of an otherwise procedurally defaulted claim:  (1) "cause and prejudice" and (2) "actual innocence."  *Dretke v. Haley*, 541 U.S. 386, 393 (2004).  A habeas petitioner can establish "cause and prejudice" if (1) "some objective factor external to the defense impeded the effort to raise the claim properly in the state court," and (2) "there is at

17

least a reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017). "Actual innocence," on the other hand, "applies to a severely confined category:  cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).  The petitioner bears the burden of establishing that one of these exceptions to the procedural default rule applies.  *See Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the actual innocence claim with new reliable evidence." (citation omitted)), *op. modified on reh'g on different grounds*, 459 F.3d 1310 (11th Cir. 2006) (per curiam).

### 1.    *Cause and Prejudice*

In his petition, Petitioner states that his "appeal attorney refused to raise the issue" in state court on direct appeal.  (Doc. # 1 at 6.)  Liberally construed, the allegation is that appellate counsel negligently failed to present the custody claim

Petitioner now presses in a petition for writ of certiorari to the Alabama Supreme Court on direct appeal.[9]  But this assertion does not establish cause.

In *Carruth v. Commissioner, Alabama Department of Corrections*, the Eleventh Circuit reiterated, as relevant here, that "[a]ttorney negligence is generally not good cause to excuse procedural default" and that "[a]ttorney performance is only relevant if the procedural default stems from constitutionally required counsel's deficient performance."  93 F.4th 1338, 1355 (11th Cir.), *cert. denied sub nom. Carruth v. Hamm*, 145 S. Ct. 208 (2024).  Because there was "no federal constitutional right to counsel for discretionary appeals," the *Carruth* petitioner could not rely on appellate counsel's failure to seek certiorari review (or to advise about further appellate options) to excuse his default.  *Id.* at 1356–57.  The same reasoning applies here:  Appellate counsel's failure to file a certiorari petition in the Supreme Court of Alabama on direct review cannot establish cause for procedural default.  Thus, Petitioner has not identified an "objective factor external to the defense" that "impeded the effort to raise the claim properly in the state court." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017).  Because Petitioner has not shown cause, prejudice need not be analyzed.  *See id.*

---

[9] Even if Petitioner instead means to argue that appellate counsel should have presented his current custody theory to the ACCA on direct appeal, that contention does not alter the dispositive fact that no certiorari petition was filed in the Alabama Supreme Court on direct review.

2.      *Fundamental Miscarriage of Justice:  Actual Innocence*

Petitioner invokes actual innocence as a "gateway" to excuse procedural default.  (Doc. # 1 at 13–14; Doc. # 16 at 2.)  But his arguments do not satisfy the demanding actual-innocence standard because he advances a legal-sufficiency theory, not a showing of factual innocence supported by new, reliable evidence.

The second exception to the general rule that a federal court may not consider a procedurally defaulted claim is where "the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense."  *Dretke v. Haley*, 541 U.S. 386, 393 (2004).  The actual innocence exception "is exceedingly narrow," *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1013 (11th Cir. 2012) (per curiam), and requires a petitioner "(1) to present new reliable evidence that was not presented at trial, and (2) to show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence," *id.* at 1011 (cleaned up).  Critically, a petitioner must show "factual innocence, not mere legal insufficiency." *Johnson v. Fla. Dep't of Corr.*, 513 F.3d 1328, 1334 (11th Cir. 2008) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)); *accord McKay v. United States*, 657 F.3d 1190, 1197 (11th Cir. 2011).

Petitioner has not pointed to any new, reliable evidence showing either that he did not commit the conduct underlying his first-degree escape conviction or that

it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. He does not allege any new, reliable evidence that would negate, as a factual matter, an element of first-degree escape. Instead, Petitioner contends that the State failed to prove the "custody" element because, in his view, his arrest and the probation-revocation process were unlawful under federal constitutional principles and state law. (Doc. # 16 at 1–4; *see* Doc. # 20 at 1–6.) Those contentions challenge the legal sufficiency of the State's proof, not whether Petitioner in fact engaged in the escape conduct for which the jury convicted him. Because Petitioner's "actual innocence" gateway theory rests on alleged legal defects in the criminal proceedings leading to custody, rather than on new, reliable evidence of factual innocence, he has not satisfied the narrow, actual-innocence exception.

## V. CONCLUSION

Petitioner did not raise his claim in a petition for a writ of certiorari in the Alabama Supreme Court on direct appeal; thus, his claim has been procedurally defaulted. He also has not shown cause and prejudice or a fundamental miscarriage of justice sufficient to excuse his procedural default. Therefore, the 28 U.S.C. § 2254 petition must be dismissed with prejudice.

Pursuant to Rule 11(a) of the *Rules Governing Section 2254 Cases in the United States District Courts*, "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant." Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see* 28 U.S.C. § 2253(c). Therefore, Petitioner will be denied a certificate of appealability.

Accordingly, it is ORDERED that Petitioner's 28 U.S.C. § 2254 petition is DISMISSED with prejudice and that he is DENIED a certificate of appealability.

Final judgment will be entered separately.

DONE this 16th day of June, 2026.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE